# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

MARY JANE LONG, as Executrix of  )
the Estates of David G. Moser and  )
Patricia Ann Moser, and  )
GLEN MOSER, INC.,  )
　　　　　　　　　　　　　　　　　 )
　　　　　　　　　　　　　　　　　 )　　C.A. No. N20C-05-022 JRJ
Plaintiffs/  )
Counterclaim Defendants,  )
　　　　　　　　　　　　　　　　　 )
v.  )
　　　　　　　　　　　　　　　　　 )
FULTON BANK, N.A.,  )
　　　　　　　　　　　　　　　　　 )
Defendant/  )
Counterclaim Plaintiff.  )

## MEMORANDUM OPINION

Date Submitted:　　February 24, 2021
Date Decided:　　　May 24, 2021

*Upon Defendant/Counterclaim Plaintiff Fulton Bank, N.A.'s*
*Motion for Judgment on the Pleadings*: **GRANTED IN PART AND DENIED IN PART**

David A. White, Esquire, Matthew J. Rifino, Esquire, McCarter & English, LLP, 405 North King Street, Suite 800, Wilmington, Delaware 19801, Attorney for Plaintiffs/Counterclaim Defendants.

Jared T. Green, Esquire, R. Karl Hill, Esquire, Seitz, Van Ogtrop & Green, P.A., 222 Delaware Avenue, Suite 1500, Wilmington, Delaware 19801, Attorney for Defendant/Counterclaim Plaintiff.

**Jurden, P.J.**

# I. INTRODUCTION

This action arises out of a mortgage leasehold relationship involving real property (the "Real Property") and a mortgage on that property. The Real Property is owned by Plaintiff Mary Jane Long ("Long") in her capacity as Executrix of the Estates of David G. Moser and Patricia Ann Moser. The mortgage on the Real Property was granted to Defendant Fulton Bank, N.A., ("Fulton Bank").[1] Plaintiff Glen Moser, Inc. ("Moser, Inc.") is a Delaware corporation wholly owned by the Estates of David G. Moser and Patricia Ann Moser.[2] Long sued Fulton Bank on behalf of the Estates of David G. Moser and Patricia Ann Moser, (collectively, the "Moser Plaintiffs").[3] The basis of the suit was an allegedly improper and illegal mortgage granted on the Real Property known as 296 Churchmans Road, New Castle, Delaware.[4] Long asserts that a separate entity, Churchmans Road Venture, LLC ("Churchmans Road Venture"), which at one time leased the Real Property from Moser, Inc., entered into a loan agreement with Fulton Bank and subsequently executed a mortgage in favor of Fulton Bank, granting Fulton Bank a security interest in the Real Property as part of the loan agreement.[5] Long claims that

---

[1] Complaint ("Compl.") ¶ 1 (Trans. ID 65614489).
[2] *Id.* ¶ 2.
[3] The Court will use "Moser, Inc." when referring to Glen Moser, Inc. as the contracting party in the lease, mortgage, and related agreements, and "Moser Plaintiffs" when referring to Mary Jane Long and Glen Moser, Inc. in their capacity as a party to the present suit.
[4] Compl. ¶¶ 1-2.
[5] *Id.* ¶¶ 3-5. The mortgage on the Property was executed on behalf of Churchmans Road Venture by Kenneth M. Freemark, Jr. as "Operating Manager" of Churchmans Road Venture.

Churchmans Road Venture was not authorized to grant a mortgage on the Real Property; that at all material times, Fulton Bank knew or should have known this fact; and that, for these reasons, the mortgage is null and void as it relates to the Real Property.[6]

Fulton Bank does not dispute the existence of the mortgage or its business relationship with Churchmans Road Venture; rather, Fulton Bank claims that the mortgage validly creates and confers upon Fulton Bank a legal security interest in the Real Property.[7] The Real Property's owner, Moser, Inc., entered into the lease agreement with tenant Churchmans Road Venture. Fulton Bank argues that the lease agreement expressly reserved for Churchmans Road Venture the right to mortgage its leasehold interest in the Real Property.[8] Fulton Bank also brought six counterclaims against the Moser Plaintiffs relating to the various mortgage and lease agreements. Now before the Court is Fulton Bank's Motion for Judgment on the Pleadings seeking judgment as to the Moser Plaintiffs' claims against it and Counts II, III, IV, and VI of its own counterclaims.[9]

## II. BACKGROUND

---

[6] *Id.* ¶¶ 6-8.
[7] Answer and Counterclaim ("Ans. & CC.") ¶¶ 26-28 (Trans. ID 65701879).
[8] *Id.* ¶¶ 22-26.
[9] Defendant's Motion for Judgment on the Pleadings ("Def. Mot. Judg. Plea.") (Trans. ID 65818001).

3

The underlying facts of this suit are convoluted and voluminous, so for the sake of brevity, the following includes the relevant but non-exhaustive recitation of the parties' dispute.

## A. The Original Lease Agreement & Related Agreements

On August 1, 1982, Moser, Inc., which was named "Reproduction Center, Inc." at that time and up until 1987,[10] entered into an agreement with Churchmans Road Venture titled Indenture of Land Lease ("Lease Indenture"). Under the agreement, Moser, Inc. leased to Churchmans Road Venture certain physical land on the Real Property that it owned (the "Premises").[11] The Lease Indenture, in relevant part, required Churchmans Road Venture to pay a sum of $5,520.00 per year, beginning on March 1, 1983, and it provided for increases in the amount of rent due over the lifetime of Churchmans Road Venture's tenancy.[12] Importantly, the Lease Indenture provided that any alterations, new construction, and improvements made on the Premises must remain the property of Churchmans Road Venture.[13]

Two sections of the Lease Indenture lie at the heart of this dispute. The first is Paragraph 13(b), which provides remedies for Moser, Inc. in the event of

---

[10] Ans. & CC. ¶ 36, Ex. 4.
[11] *Id.* ¶¶ 5-6, at 6-7. A subsequent agreement, the First Amendment to the Lease Indenture, extended the Lease Term to July 31, 2045. *Id.* ¶¶ 33-35, Ex. 3.
[12] *Id.* ¶¶ 6-9, at 6-8, Ex. 1 ¶ 1.
[13] *Id.* ¶ 15, at 8, Ex. 1 ¶ 10.

Churchmans Road Venture's default or failure to observe or perform its duties. In either case, Moser, Inc. could elect to (1) perform or cause the performance of Churchmans Road Venture's duties at the sole cost and expense of Churchmans Road Venture, (2) terminate the lease and assume ownership of the improvements subject to payment of any existing mortgage, or (3) compel Churchmans Road Venture's performance of the agreement.[14]

The other section of the Lease Indenture of particular importance here is Paragraph 15, which outlines Churchmans Road Venture's rights as they relate to mortgaging the leasehold. Among other things, Paragraph 15 permits Churchmans Road Venture to "mortgage the leasehold estate hereby created and/or the improvements on the [Premises] with all benefits and privileges appertaining thereto" and requires Moser, Inc. to provide any mortgagee the same notice of default and right to cure default that Moser, Inc. retains under the Lease Indenture.[15]

On August 1, 1982, the parties entered into a contemporaneous agreement titled the Memorandum of Lease Term ("Lease Memorandum"), which provided that "all buildings and other improvements on the Premises shall belong to [Churchmans Road Venture]."[16] Following the execution of the Lease Indenture and the Lease Memorandum, Churchmans Road Venture began constructing buildings

---

[14] Ans. & CC. ¶ 18, at 9, Ex. 1 ¶ 13(b).
[15] *Id.* ¶ 11, at 8, Ex. 1 ¶ 15.
[16] *Id.* ¶ 25, at 10, Ex. 2 ¶ 3.

on the Premises for commercial purposes (collectively, with all other improvements, additions, and new construction on the Premises, the "Improvements").[17]

### B. The Subordination Agreement, Second Amendment, and Mortgage

On November 8, 2011, Moser, Inc. executed and delivered to Fulton Bank a Landlord's Agreement and Waiver (Borrower) (the "Subordination Agreement") acknowledging that Churchmans Road Venture was seeking a loan from Fulton Bank and agreeing to subordinate its own rights in the collateral ("Collateral") of Churchmans Road Venture in favor of Fulton Bank's rights in the same.[18] The Subordination Agreement expressly defines Collateral as Churchmans Road Venture's personal property, including "all business assets including equipment, inventory, and general intangibles," to at no time "be deemed to be fixtures or part of the Premises, notwithstanding the fact that the Collateral or any part thereof is attached or affixed to the Premises in any manner whatsoever."[19] Also central to the parties' dispute here is the term of the Subordination Agreement that requires Moser, Inc. to provide Fulton Bank with written notice of its intent to terminate the Lease Indenture.[20]

---

[17] *Id.* ¶¶ 28-31.

[18] *Id.* ¶¶ 38-39, Ex. 5 ¶ 4.

[19] Plaintiff's Opposition to Defendant's Motion for Judgment on the Pleadings ("Pl. Opp. to Def. Mot. Judg. Plea.") at 3, Ex. 5 (Trans. ID 65966461). The Court will use the terms "Improvements" and "Collateral" to indicate personal property owned by Churchmans Road Ventures on the Premises interchangeably.

[20] Ans & CC. ¶ 43, Ex. 5 ¶ 2.

The second amendment to the Lease Indenture (the "Second Amendment"), entered into by Moser, Inc., and Churchmans Road Venture added three new provisions: (1) Moser, Inc.'s acknowledgment that Fulton Bank was to provide a loan to Churchmans Road Venture in the amount of $539,000,00, (2) Churchmans Road Venture's permission to grant Fulton Bank a leasehold mortgage in the Premises, and (3) Moser, Inc.'s duty to provide Fulton Bank with "written notice of any event of default by [Churchmans Road Venture] and [Fulton Bank] shall have the right to cure any such event of default within the succeeding thirty (30) days, which cure [Moser, Inc.] agrees to accept."[21]

Churchmans Road Venture and Fulton Bank executed a mortgage (the "Mortgage") as security for the $539,000.00 loan provided by Fulton ("Loan 9001") on November 23, 2011.[22] The Mortgage agreement required Churchmans Road Venture to notify Fulton Bank if it defaulted on its performance or failed to perform its terms under the Lease Indenture.[23] Loan 9001 is secured, *inter alia*, by the commercial guaranties of Kenneth M. Freemark, Karen M. Ciaffi Freemark, David G. Moser, and the Glenn Davis Moser Trust for the Benefit of David G. Moser U/A 8/22/2004.[24] The validity of the Mortgage as a legally sound agreement is not in

---

[21] *Id.* ¶¶ 45-51, Ex. 5. ¶ 4.
[22] *Id.* ¶¶ 53-56, Ex. 7-9.
[23] Pl. Opp. to Def. Mot. Judg. Plea. at 3, Ex. 9 at 4.
[24] Ans. & CC. ¶ 59, Ex. 11-14.

dispute.[25] Very much in dispute, however, is a document contemporaneous to the Mortgage: the Assignment of Rents agreement ("Assignment of Rents"). According to Fulton Bank, the Assignment of Rents, executed between Churchmans Road Venture and Fulton Bank, allegedly assigns Churchmans Road Venture's "right, title, and interest in and to the Rents from the [Premises]" to Fulton Bank as security for Loan 9001 and related indebtedness.[26] The Assignment of Rents includes a representation that Churchmans Road Venture "has the full right, power, and authority to enter [into the agreement] and convey the Rents to [Fulton Bank]."[27]

### C. The Termination of the Lease Indenture and Following Disputes

On April 19, 2019, Moser, Inc. sent notice to Churchmans Road Venture and Fulton Bank of its termination of the Lease Indenture for Churchmans Road Venture's failure to pay the rental payments due under the Lease Indenture from 2012 to 2019 ("April 2019 Notice").[28] The April 2019 Notice also states that "[Long], Trustee of Glen Moser Trust, the sole shareholder of [Moser, Inc.], hereby

---

[25] Though the parties dispute the validity of the Mortgage in their briefing, at oral argument held on February 24, 2021, the parties agreed the validity of the Mortgage is not in dispute. For this reason, the Court will not discuss the parties' contentions as they relate to the issue of the validity of the Mortgage.

[26] Ans. & CC. ¶ 57, Ex. 10.

[27] *Id.*, Ex. 10 at 2.

[28] *Id.* ¶¶ 70-71, Ex. 16. Plaintiff does not dispute that Churchmans Road Venture failed to make the rental payments from 2012 and 2019 or that it did not declare Churchmans Road Venture in default of the Lease Indenture until April 2019. Plaintiff's Reply to Counterclaim ("Pl. Rep. to CC.") ¶¶ 184-186 (Trans. ID 65764073).

assumes ownership of the improvements on the [Premises]."[29]  Less than one month later, on May 16, 2019, Moser, Inc. sent notice to inform Fulton Bank of Churchmans Road Venture's default totaling $82,260.00 in unpaid rent as required by the Second Amendment to the Lease Indenture (the "May 2019 Notice").[30]  The May 2019 Notice demanded that Fulton Bank "remove or take possession of the Collateral located on the [Premises]" and that if Fulton Bank chose to take possession of the Collateral, it must remit the payment of $82,260.00 to Moser, Inc., pursuant to the Second Amendment.[31]  It is undisputed that Moser, Inc. sent the April 2019 Notice and the May 2019 Notice (collectively, the "Notices") to Fulton Bank.[32]

Fulton Bank claims that it engaged in settlement discussions with the Moser Plaintiffs and Churchmans Road Venture after receiving the May 2019 Notice, but the Moser Plaintiffs claim that Fulton Bank made no arrangements to assume the Lease Indenture, take possession of the Collateral, or remit the rental payment due.[33]

---

[29] Ans. & CC. ¶ 71, Ex. 16.

[30] *Id.* ¶ 72, Ex. 17.  The Second Amendment to the Lease Indenture requires Moser, Inc. to "give Fulton Bank written notice of any event of default by [Churchmans Road Venture]" and allows Fulton Bank the right to cure the default within 30 days.  *Id.*, Ex. 6 ¶ 3.

[31] Ans. & CC. ¶ 72, Ex. 17.  On June 5, 2019, Fulton Bank sent a notice to Churchmans Road Venture and its personal guarantors informing that it was in default of Loan 9001 and demanding it pay the entire unpaid principal balance, along with accrued and unpaid interest, totaling $403,245.71.  *Id.* ¶ 62, Ex. 15.  Churchmans Road Venture allegedly defaulted on a secondary loan from Fulton Bank, Loan 9002, with an outstanding principal balance of $14,907.09.  *Id.*  The notice of default demanded payment of the entire unpaid principal balance of both Loan 9001 and Loan 9002.  *Id.*

[32] At oral argument on February 24, 2021, Fulton Bank's counsel stated that, for purposes of the argument on this Motion, he accepts that Fulton Bank received the Notices.

[33] Ans. & CC. ¶ 76; Pl. Opp. to Def. Mot. Judg. Plea. at 6.

Moser, Inc. commenced an action against Churchmans Road Venture for summary possession in Justice of the Peace Court and did not name Fulton Bank in the suit (the "Eviction Lawsuit").[34] On August 22, 2019, the Justice of the Peace Court entered default judgment for Moser, Inc. and awarded it summary possession of the Premises (the "Summary Possession Judgment").[35]

The Moser Plaintiffs commenced this action against Fulton Bank seeking a declaration that the Mortgage does not confer any right in the Premises to Fulton Bank.[36] Fulton Bank denied the claims in the Complaint and responded with six counterclaims against the Moser Plaintiffs.[37] Relevant to this Motion are Counts II, III, IV, and VI of Fulton Bank's Counterclaims, which request, respectively,

(1) a claim for declaratory relief regarding the validity of the mortgage;[38]

(2) a claim for declaratory relief permitting Fulton Bank to take possession of the Premises subject to the Mortgage until the debt secured by the Mortgage is satisfied;[39]

(3) a claim for declaratory judgment finding that the Premises is not the property of Moser, Inc., that Fulton Bank is authorized to foreclose on the Premises, and that any rights and/or interests of Moser, Inc. are subordinate to Fulton Bank, pursuant to the Subordination Agreement;[40] and

---

[34] Def. Mot. Judg. Plea at 10; Pl. Opp. to Def. Mot. Judg. Plea. at 6-7 (Ans. & CC. Ex. 18).

[35] Pl. Opp. to Def. Mot. Judg. Plea. at 7 (Ans. & CC. Ex. 19). The Moser Plaintiffs point out that Fulton Bank filed a motion for Relief from Default Judgment to Intervene in Action as Indispensable Party and Stay of Judgment in the Eviction Lawsuit, but the motion was denied. *Id.*

[36] Compl. at 1.

[37] Ans. & CC. at 5.

[38] Ans. & CC at 22-25 (Count II).

[39] *Id.* at 25-27 (Count III).

[40] *Id.* at 27-29 (Count IV).

(4) a claim for declaratory relief barring the Moser Plaintiffs from recovering the unpaid rent due under the Lease Indenture from any party and finding that the Moser Plaintiffs failed to provide Fulton Bank with timely notice of default under the Lease Indenture such that Fulton Bank was precluded from exercising its right to take possession of the Premises.[41]

Fulton Bank now moves for default judgment as to the Moser Plaintiffs' Complaint and Counts II, III, IV, and VI of its Counterclaims.[42]

## III. PARTIES' CONTENTIONS

Despite the extensive background of this case, the present disputes between the parties can be summarized succinctly, having been pared down during the oral argument held on February 24, 2021. Both the Moser Plaintiffs' Complaint and Count II of Fulton Bank's Counterclaims seek declarations relating to the validity and enforceability of the Mortgage and whether it creates and confers a legal right, title, interest, or lien in the Premises. At oral argument, however, counsel for both parties agreed the Mortgage is valid, binding, and fully enforceable on its face. What remains in dispute is whether, as the Moser Plaintiffs argue, Fulton Bank abandoned its interest in the Mortgage when it received notice of Churchmans Road Venture's default on the Lease Indenture but failed to "make arrangements to take over the lease, take possession the collateral, or pay the past due rent."[43] The Moser Plaintiffs argue that they complied with the requirement to provide notice to Fulton Bank of

---

[41] *Id.* at 32-33 (Count VI).
[42] Def. Mot. Judg. Plea at 12.
[43] Pl. Opp. to Def. Mot. Judg. Plea. at 6.

Churchmans Road Venture's default in the April 2019 and, in particular, in the May 2019 Notice, which gave Fulton Bank 30 days to take possession of the Collateral on the Premises pursuant to the Subordination Agreement.[44] The Moser Plaintiffs also question Fulton Bank's characterization of the "Collateral" as defined in the Subordination Agreement, suggesting that if Fulton Bank had intended the Collateral to include improvements and buildings on the Premises, it would have expressly included those terms in the Subordination Agreement.[45] Therefore, the Moser Plaintiffs assert that Fulton Bank has relinquished its right to claim or possess the improvements and buildings on the Premises.[46] Finally, the Moser Plaintiffs deny, with no further explanation, all of the remaining material allegations in the Counterclaims and assert various affirmative defenses.[47]

At the heart of Fulton Bank's Motion lies its claim that the Moser Plaintiffs breached Paragraph 13(b) of the Lease Indenture and, as a result, caused Fulton Bank financial harm, the loss of rent, and impairment of its Improvements.[48] This is the basis for Count III of its Counterclaims. Paragraph 13(b) of the Lease Indenture provides three remedies to Moser, Inc. in the event of Churchmans Road Venture's

---

[44] *Id.* at 5-6.
[45] The Moser Plaintiffs' counsel raised this point at oral argument on February 24, 2021.
[46] Pl. Opp. to Def. Mot. Judg. Plea. at 7.
[47] *Id.* at 7-9.
[48] At oral argument on February 24, 2021, Fulton Bank's counsel stressed that the application of Paragraph 13(b) of the Lease Indenture is the dispositive issue on this Motion.

default.[49] It is undisputed that Moser, Inc. chose remedy number two, which provides that, "[i]n the event of default hereunder by [Churchmans Road Venture], [Moser, Inc.] shall have the right . . . (ii) to terminate the lease and assume ownership of the improvements subject to payment of any mortgage thereon[.]"[50] Fulton Bank argues that in the original Lease Indenture with Churchmans Road Venture, the Moser Plaintiffs expressly contracted to assume ownership of the Improvements on the Premises "subject to payment of any mortgage thereon."[51] According to Fulton Bank, because the Moser Plaintiffs terminated the Lease Indenture and took ownership of the Improvements on the Premises without satisfying the remaining indebtedness secured by the Mortgage, the Mortgage serves as a lien on the Premises and Fulton Bank possesses all rights and privileges afforded to a leasehold mortgagee.[52]

In Count IV of the Counterclaims, Fulton Bank argues that the Mortgage confers a valid security interest in the assets and property owned by Churchmans Road Venture.[53] This includes any new construction, improvements, and additions made to the Real Property owned by Moser, Inc.[54] Fulton Bank asserts that the relevant agreements evidence Churchmans Road Venture's ownership rights in the

---

[49] Pl. Rep. to CC. ¶ 121.
[50] Ans. & CC. Ex. 1 at 12.
[51] *Id.*
[52] Def. Mot. Judg. Plea. at 22.
[53] *Id.* at 23.
[54] *Id.*

13

Improvements.[55]  The Lease Indenture, in relevant part, provides that "[a]ll such alternations, new construction and improvements shall be and remain the property of [Churchmans Road Ventures]."[56]  Further, Fulton Bank argues that the Moser Plaintiffs intended Fulton Bank's security interest to vest in the Improvements on the Premises, superior to Moser, Inc.'s interest, when Moser, Inc. entered into the Subordination Agreement with Fulton Bank and agreed not "to take any action, which could be detrimental to the [Improvements], or its value or the rights and interest of [Fulton Bank] in and to the [Improvements]."[57]  Fulton Bank argues that because it possesses a lien on and security interest in the Improvements, it should be authorized to foreclose on the Improvements to satisfy the indebtedness on its Mortgage.

Finally, in Count VI, Fulton Bank seeks to be excused from its performance of its contractual obligations to assume possession of the Collateral within 30 days of notice of default in light of the Moser Plaintiffs' alleged material breach of the Second Amendment.[58]  Pursuant to the Lease Indenture, Churchmans Road Venture was in default on a rental payment if the payment was not made within 30 days of the due date.[59]  It is undisputed Churchmans Road Venture failed to make rental

---

[55] *Id.*
[56] Ans. & CC. Ex. 1 ¶ 10; *see also id.* Ex. 2 ¶ 3.
[57] Def. Mot. Judg. Plea. at 23; *see supra* note 19; Ans. & CC. Ex. 5 ¶ 2.
[58] Def. Mot. Judg. Plea. at 26.
[59] Ans. & CC. Ex. 1 ¶ 13(a).

payments between 2012 and 2019.[60]  Under the Second Amendment, Moser, Inc. is

obligated to provide any mortgagee with notice of Churchmans Road Venture's

default.[61]  The Moser Plaintiffs did not declare default or provide notice to Fulton

Bank of the default until April 2019, when the amount owed reached $82,260.00.[62]

For this reason, Fulton Bank argues that the Moser Plaintiffs failed to provide timely

notice of the default and, therefore, breached their obligations under the Lease

Indenture and Second Amendment.[63]  Fulton Bank relies on a significant body of

case law to support this contention.  While admitting that the Lease Indenture does

not prescribe a specified number of days following default by which Moser, Inc.

must provide notice of the default, Fulton Bank argues that the promise to perform

with reasonable expediency implied in every contract dictates that waiting 7 years

to provide notice of a default is a clear breach of contract.[64]  In light of the Moser

Plaintiffs' delay, Fulton Bank argues the breach is material because it essentially

defeats the purpose of the contract, and, therefore, Fulton Bank's alleged failure to

take action in response to the April 2019 notice should be excused.[65]  It is important

---

[60] *See supra* note 28.

[61] Ans. & CC. Ex. 6 ¶ 3.

[62] *See supra* note 28.

[63] Def. Mot. Judg. Plea. at 27.

[64] *Id.* at 27 n.27 (citing *Comet Sys., Inc. S'holders' Agent v. MIVA, Inc.*, 980 A.2d 1024, 1034 (Del. Ch. 2008)) ("In every contract there is implied a promise or duty to perform with reasonable expediency the thing agreed to be done; a failure to do so is a breach of contract.").

[65] *Id.* at 29 (citing *Preferred Investment Servs., Inc. v. T&H Bail Bonds, Inc.*, 2013 WL 3934992, at *11 (Del. Ch. July 24, 2013)).

to note that the Moser Plaintiffs do not offer an argument to refute Fulton Bank's claim that the Moser Plaintiffs breached the Lease Indenture; they offer only an outright denial.

Fulton Bank also seeks a declaration that the Moser Plaintiffs have waived their right to seek repayment of the full amount owed due to the Moser Plaintiffs' delay to enforce Fulton Bank's duty to cure.[66]  Fulton Bank argues that the Moser Plaintiffs' failure to enforce the rental payment obligation every month for 7 years constitutes "a willful or intentional act or series of intentional acts capable of establishing waiver."[67]  Therefore, Fulton Bank argues the Moser Plaintiffs have waived their right to seek repayment from Fulton Bank for the missed rental payments.

## IV.  DISCUSSION

### A.    Standard of Review

A motion for judgment on the pleadings made pursuant to Superior Court Civil Rule 12(c) will be granted only when no material issues of fact exist and the movant is entitled to judgment as a matter of law.[68]  Under Rule 12(c), if matters outside the pleadings are presented to and considered by the Court, the motion must

---

[66] *Id.* at 31.

[67] *Id.* at 31 n.41 (citing *Julian v. Eastern States Const. Serv., Inc.*, 2008 WL 2673300, at *15 (Del. Ch. July 8, 2000)).

[68] *Artisans' Bank v. Seaford IR, LLC*, 2010 WL 2501471, at *1 (Del. Super. June 21, 2010) (citing *Gonzales v. Apartment Communities Corp.*, 2006 WL 2905724, at *1 (Del. Super. Oct. 4, 2006)).

be treated as one for summary judgment under Rule 56. In this case, the following, *inter alia*, are Exhibits to the Counterclaims and are incorporated by reference in the Counterclaims: (1) the Lease Indenture, (2) the Lease Memorandum, (3) the Corrective Deed, (4) the Subordination Agreement, (5) the Second Amendment, (6) the Loan Agreement, (7) the Mortgage, (8) the Assignment of Rents, (9) the April 2019 Notice, (10) the May 2019 Notice, (11) the Eviction Lawsuit, and (12) the Summary Possession Judgment. To the extent that the Moser Plaintiffs argue that the documents included as exhibits and incorporated by reference in Fulton Bank's Counterclaims present extraneous matters outside the pleadings, such documents are not outside the pleadings and may be considered in connection with Fulton Bank's Motion.[69]

### B.    Moser Plaintiffs' Complaint & Count II of Counterclaims

With respect to the allegations set forth in the Complaint, wherein the Moser Plaintiffs seek a declaration that the Mortgage is null and void and that it does not create or confer any right, title, interest, or lien in the Premises, the parties have agreed that the Mortgage is valid, binding, and fully enforceable on its face. For this reason, the Court will treat the claims made in the Moser Plaintiffs' Complaint as moot. The Court will also treat as moot Fulton Bank's argument that procedural

---

[69] *Lagrone v. Am. Mortell Corp.*, 2008 WL 4152677, at *4 (Del. Super. Sept. 4, 2008) ("Matters attached to a complaint, and incorporated by reference, are not 'extraneous' for purposes of Rule 12[.]").

bars preclude the relief sought in the Complaint.[70] Because Count II of Fulton Bank's Counterclaims seeks a declaration relating to the validity of the Mortgage as well, the Court will treat the relief sought under Count II as moot.

### C.  Fulton Bank's Counterclaims Against the Moser Plaintiffs

#### 1. Count III of Counterclaims: Fulton Bank's Interest in the Premises

Having established that the Mortgage on Churchmans Road Venture's Improvements, located on the Premises, is a valid, binding, and enforceable mortgage, the Court now turns to Fulton Bank's claim that the Moser Plaintiffs may only take possession of the Collateral at issue, subject to payment of any mortgage thereon.

The Court must abide by the clear and unambiguous language of the Lease Indenture.[71] The provision at issue here, Paragraph 13(b) of the Lease Indenture is unambiguous; it allows Moser, Inc. to terminate the Lease Indenture and assume ownership of the Premises, *subject to payment of any mortgage thereon.*[72] The language does not reasonably lend itself to two different meanings or

---

[70] Def. Mot. Judg. Plea at 14-21.

[71] *Rhone-Poulenc Basic Chem. Co. v. American Motorists Inc. Co.*, 616 A.2d 1192, 1996 (Del. 1992) (internal citations omitted) ("Courts will not torture contractual terms to impart ambiguity where ordinary meaning leaves no room for uncertainty."); *see also ConAgra Foods Inc. v. Lexington Ins. Co.*, 21 A.3d 62, 68-69 (Del. 2011) ("This Court has adopted traditional principles of contract interpretation. One such principle is to give effect to the plain meaning of a contract's terms and provisions when the contract is clear and unambiguous.").

[72] The Moser Plaintiffs do not address the applicability of Paragraph 13(b) in their Opposition to Fulton Bank's Motion for Judgment on the Pleadings.

interpretations.[73]   After sifting through the non-dispositive facts and agreements in this matter and viewing the relevant facts in the light most favorable to the non-movant, the Court finds that the Moser Plaintiffs may take possession of the Premises, subject to payment of the indebtedness secured by Fulton Bank's Mortgage.  Fulton Bank's Motion for Judgment on the Pleadings as to Count III of the Counterclaim is therefore **GRANTED**.

   2.   Count IV of Counterclaims: Priority of Rights in the Premises

The Court reaches the same conclusion as to Count IV of the Counterclaims. Reading the Lease Memorandum, the language expressly states that "[a]ll buildings and other improvements on the Premises shall belong to [Churchmans Road Ventures.]"[74] Similarly, the Lease Indenture provides that all "new construction and improvements" remain the property of Churchmans Road Venture.[75] No reasonable interpretation of the relevant agreements would indicate that the Improvements are the property of Moser, Inc; the Improvements on the Premises are the property of Churchmans Road Venture, subject to the security interest held by Fulton Bank pursuant to Paragraph 13(b) of the Lease Indenture.

The language used in the Subordination Agreement does leave room for uncertainty, but for the reasons discussed above, this uncertainty is immaterial to the

---

[73] *See Rhone-Poulenc Basic. Chem. Co.*, 616 A.2d at 1196.
[74] Ans. & CC. Ex. 2 ¶ 3.
[75] *Id.* Ex. 1 ¶ 10.

disposition of Count IV. The language of the Subordination Agreement indicates that Moser, Inc. agreed to subordinate any and all rights with respect to the Collateral in favor of Fulton Bank's interests in the same.[76] The Moser Plaintiffs, however, argue that a distinction exists between the definition of "Collateral" in the Subordination Agreement and that of "Improvements" in the Lease Indenture and Lease Memorandum.[77] They assert that the Subordination Agreement, which grants their interest in Collateral owned by Churchmans Road Venture in favor of Fulton Bank, is defined as "goods," which includes business assets, equipment, inventory, and general intangibles, not the buildings, new construction, and improvements contemplated in the Lease Indenture and Lease Memorandum.[78] Reasonable minds may differ on the interpretation of the term "Collateral" as it exists in the Subordination Agreement. However, it has been established that Fulton Bank possesses a security interest in Churchmans Road Venture's leasehold interest in the Real Property.[79] Further, the agreements expressly state that Churchmans Road Venture's leasehold interest in the Real Property are the Improvements as defined in the Lease Indenture and Lease Memorandum and that the Moser Plaintiffs have no ownership interest conferred by the agreements in the same.[80] Therefore, Fulton

---

[76] Ans. & CC. Ex. 5 ¶ 3.
[77] Pl. Opp. to Def. Mot. Judg. Plea. at 14.
[78] Ans. & CC. Ex. 5.
[79] *Id.* Ex. 9.
[80] *Id.* Ex. 1 ¶ 10, Ex. 2 ¶ 3.

20

Bank's security interest in the Improvements on the Premises is superior to the Moser Plaintiffs' interest, pursuant once again to Paragraph 13(b) of the Lease Indenture. Fulton Bank may rightfully dispose of the Improvements to satisfy the remaining unpaid principal on the Mortgage.[81]

Therefore, Fulton Bank's Motion for Judgment on the Pleadings as to Count IV of the Counterclaim is **GRANTED**.

### 3. Count VI of Counterclaims: Moser, Inc.'s Failure to Notify

Finally, the Court turns to Count VI of Fulton Bank's Counterclaims, wherein Fulton Bank seeks a declaration that the Moser Plaintiffs materially breached the Lease Indenture, excusing Fulton Bank's performance, and waived their right to collect the missed rental payments under the same.[82]

Even after viewing all facts in the light most favorable to the non-movant, the Court concludes that the Moser Plaintiffs' failure to notify Fulton Bank of Churchmans Road Venture's default for 7 years constitutes a material breach of their obligations under the Lease Indenture and Second Amendment. The Lease Indenture and Second Amendment do not require the Moser Plaintiffs to provide notice of Churchmans Road Venture's default within a specified amount of time, but under well-settled principles of Delaware law, every contract contains an implied

---

[81] Fulton Bank states that in a sale of the Improvements, the proceeds will be allocated according to the value attributable to the Land and the Improvements, respectively. *See* 25 *Del. C.* § 2501.
[82] Def. Mot. Judg. Plea. at 26-27.

promise by the parties to perform with reasonable expediency.[83]  A landlord who is contractually obligated to provide notice of a tenant's default on rental payments but who waits 7 years to do so cannot be said to have performed the duty with reasonable expediency.  The Moser Plaintiffs' 7-year delay singularly precluded Fulton Bank from realizing its contractual rights as a leasehold mortgagee, protected by the Second Amendment.[84]  Because the Court concludes that Fulton Bank's right to cure was fundamental to the protection of its security interest in the Improvements, the Moser Plaintiffs' 7-year delay constitutes a material breach of the Second Amendment.[85]  With respect to whether Fulton Bank's failure to exercise its right to cure following the April 2019 Notice of default is excused, under Delaware law, "a party clearly in material breach cannot thereafter complain of the other party's

---

[83] *Comet Sys., Inc. S'holders' Agent*, 980 A.2d at 1034 ("The [Plaintiffs] need not show that the merger agreement contains a provision requiring payment on a specific date and the payment of interest for any delay. Rather, they must simply show that payment was unreasonably withheld after the right to that payment had absolutely vested[.]"); *see also Allen v. Pictsweet Co.*, 2004 WL 2240640, at *3 (Del. Super. Sept. 20, 2004) (citing *Martin v. Star. Pub. Co.*, 126 A.2d 238, 244 (Del. 1956) ("If there is not a time period in the contract, the Court will infer a reasonable time for performance.")).

[84] Ans. & CC. Ex. 6 ¶ 3.

[85] *See SLMSoft.Com, Inc. v. Cross Country Bank*, 2003 WL 1769770, at *13 (Del. Super. Apr. 2, 2003).  Section 241 of the Restatement (Second) Contracts sets forth factors to be considered in determining whether a breach of a duty is material.  Those factors include (1) the extent to which the injured party will be deprived of the benefit which he reasonably expected; (2) the extent to which the injured party can be adequately compensated for the part of the benefit of which he will be deprived; (3) the extent to which the party failing to perform or to offer to perform will suffer forfeiture; (4) the likelihood that the party failing to perform or to offer to perform will cure his failure, taking account of all the circumstances including any reasonable assurances; and (5) the extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing.  The Court concludes the circumstances at bar do not present facts that weigh in favor of finding the breach was non-material.

failure to perform."[86]  The Moser Plaintiffs' material breach excuses Fulton Bank's failure to perform following the April 2019 Notice.

Finally, in light of the "exacting" standards that must be met to prove waiver of rights under a contract, the Court finds that judgment on this issue is premature.[87] Under well-settled Delaware law, waiver "implies knowledge of all material facts and an intent to waive, together with a willingness to refrain from enforcing those rights."[88]  To prove waiver, the "facts relied upon…must be unequivocal."[89] Whether those circumstances exist here very likely requires a determination of material facts.  This question cannot be answered at this stage of the proceedings, and thus, judgment as to whether the Moser Plaintiffs waived their right to repayment is inappropriate on this Motion.

Therefore, Fulton Bank's Motion for Judgment on the Pleadings on Count VI of the Counterclaim is **GRANTED** as to the Moser Plaintiffs' material breach of the Second Amendment and Fulton Bank's excuse from exercising its right to cure following the April 2019 Notice and **DENIED** as to the Moser Plaintiffs' waiver of its right to repayment under the Lease Indenture.

---

[86] *Commonwealth Const. Co. v. Cornerstone Fellowship Baptist Church, Inc.*, 2006 WL 2567916, at *19 (Del. Super. Aug. 31, 2006).

[87] *Bantum v. New Castle County Vo-Tech Educ. Ass'n*, 21 A.3d 44, 50 (Del. 2011).

[88] *Id.* (internal citations omitted).

[89] *Id.* (internal citations omitted).

## V.  CONCLUSION

Viewing the record in the light most favorable to the Moser Plaintiffs, the Court finds that (1) the Moser Plaintiffs' right to take possession of the Improvements is subject to payment of Fulton Bank's Mortgage thereon, (2) Fulton Bank may rightfully dispose of the Improvements to satisfy the remaining unpaid principal on the Mortgage, (3) the Moser Plaintiffs materially breached their contractual obligations under the Lease Indenture and Second Amendment, and (4) the material breach excuses Fulton Bank's failure to exercise its right to cure following the April 2019 Notice of default.  Therefore, Fulton Bank's Motion for Judgment on the Pleadings as to Counts III and IV is **GRANTED**, and as to Count VI is **GRANTED IN PART** and **DENIED IN PART**, for the reasons set forth above. [90]

**IT IS SO ORDERED.**

*Jan R. Jurden*

_____

Jan R. Jurden, President Judge

cc:  Prothonotary

---

[90] Ans. & CC. at 33.  Count VI includes three paragraphs specifying the declaration Fulton Bank seeks. Paragraph A seeks a declaration that the Moser Plaintiffs waived the right to seek repayment.  Paragraphs B and C seek declarations that the Moser Plaintiffs materially breached the Lease Indenture and Second Amendment, and that this material breach excuses Fulton Bank's obligation to exercise its right to cure, respectively.